FILED IN THE
UNITED STATES DISTRICT COURT
DISTRICT OF HAWAII

DEC 0 4 2006

at __ o'clock and __ min. __
SUE BEITIA, CLERK

CV06 00649 JMS KSC

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

YSAURO R. MUNOZ,

    Plaintiff,

    v.

GORDON R. ENGLAND,
Secretary of the Navy,

    Defendant.

Civil Action No. 05-2472 (CKK)

**MEMORANDUM OPINION**
(November 20, 2006)

Plaintiff Ysauro R. Munoz is a career Navy Civilian employee who entered into a settlement agreement with the Navy on February 28, 2002 regarding complaints Plaintiff filed against the Navy for employment discrimination based on race and age discrimination, harassment and retaliation. Plaintiff alleges that Defendant Gordon R. England, in his official capacity as Secretary of the Navy ("Defendant" or "the Navy"), breached this settlement agreement by refusing to provide Plaintiff with the career enhancement training Plaintiff sought, and that this denial of training constituted retaliation in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e, *et. seq.*, and the Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. § 621, *et. seq.* Currently pending before the Court is Defendant's Motion to Dismiss Plaintiff's Amended Complaint or, in the Alternative, to Transfer. Plaintiff has filed an Opposition to Defendant's Motion, to which Defendant has replied. Upon consideration of the parties' briefings, the relevant case law, and the entire record herein, the Court shall grant Defendant's motion to transfer venue. In light of the transfer of venue, the Court will not address

the substance of Defendant's motion to dismiss but will deny that motion without prejudice so that Defendant may refile it, if appropriate, upon transfer to the District of Hawaii.

## I: BACKGROUND

Plaintiff is a career Navy Civilian employee of Hispanic descent who is over forty years old. Am. Compl. ¶ 2. Plaintiff has been stationed overseas at the Naval Ship Repair Facility in Yokosuka, Japan since February 1, 1987 and, as an Engineering Technician, GS-12, provides technical, repair and modernization services to ships and weapons systems at the Ship Repair Facility. *Id.* ¶ 8. On August 21, 2001, Plaintiff filed a formal Equal Employment Opportunity ("EEO") complaint alleging age and race discrimination because he was not allowed to take weapon systems training and some of his responsibilities were given to other employees. *Id.* ¶ 12. Plaintiff filed a second formal EEO complaint on November 26, 2001 for continued retaliation and harassment. *Id.* ¶ 13.

On February 28, 2002, Plaintiff and the Navy entered into a settlement agreement ("Settlement Agreement"), which provided that Plaintiff would withdraw his EEO complaints in exchange for the Navy providing Plaintiff with career-enhancing training within twelve months of the date of the Settlement Agreement and also providing Plaintiff with a "Letter of Regret." *Id.* ¶ 14, Def.'s Mot. to Dismiss Ex. 2 (2/28/02 Settlement Agreement). The Settlement Agreement includes a procedure for dispute resolution, which calls for Plaintiff to complain in writing within thirty (30) days of any alleged violation of the Settlement Agreement. Def.'s Mot. to Dismiss at 3; Ex. 2 (2/28/02 Settlement Agreement) at 2-3. If the Navy fails to respond or if Plaintiff is not satisfied with the Navy's response, Plaintiff may appeal to the EEOC's Office of Federal Operations within thirty (30) days of receiving the Navy's response. *Id.*

By letter dated April 12, 2002, Plaintiff notified the Navy that he believed the Navy's refusal to provide him with requested Vertical Launch System (VLS) training constituted a breach of the Settlement Agreement. Am. Compl. ¶ 15. On June 4, 2002 Plaintiff attended a two-day training conference on the MK13 Missile Launcher. *Id.* ¶ 16. Plaintiff alleges that at the time of the training, the MK13 system was slated for removal from all Navy ships, and that the training Plaintiff attended was the last training given on the system. *Id.* On June 13, 2002, the Navy determined that it had not breached the Settlement Agreement because the one year time period had not yet elapsed, and because the Settlement Agreement did not specify any particular career-enhancing training. *Id.* ¶ 17. Plaintiff filed a timely appeal of this determination with the EEOC on July 17, 2002, *id.* ¶ 18, and on December 11, 2002, Plaintiff initiated EEO counseling for the alleged breach of the Settlement Agreement "including failures to provide requested career enhancing training, continued retaliation and removal of job responsibilities," *id.* ¶ 19. On February 23, 2003, Plaintiff filed a second formal complaint, alleging that the Navy's denial of Plaintiff's subsequent requests for training, in particular VLS training, constituted a breach of the Settlement Agreement. *Id.* ¶ 20.

On August 7, 2003, the EEOC vacated the Navy's June 13, 2002 decision and remanded the case, ordering the Navy to conduct an investigation into compliance with the Settlement Agreement and issue a new decision within 30 days. *Id.* ¶ 21. On September 4, 2003, the Navy determined that it had complied with the Settlement Agreement because the Settlement Agreement did not identify specific training classes and because the MK13 training classes that Plaintiff attended were considered career-enhancing because they were directly related to Plaintiff's duties as an Engineering Technician, GS-12. *Id.* ¶¶ 22-23. Plaintiff appealed this

determination to the EEOC on October 8, 2003. *Id.* ¶ 24. The Navy subsequently agreed to investigate Plaintiff's second settlement breach complaint and provided Plaintiff with a report of the second investigation on March 29, 2004. *Id.* ¶¶ 25-26. On August 19, 2004, Plaintiff filed an appeal with the EEOC's Office of Federal Operations. *Id.* ¶ 28. On September 21, 2005, the EEOC issued a final decision denying relief to Plaintiff on both of his complaints that the Navy breached the Settlement Agreement. *Id.* ¶ 30. Plaintiff received this decision on September 26, 2005, *id.*, and timely filed his initial one-count Complaint before this Court on December 27, 2005, alleging that the Navy breached the Settlement Agreement and that this breach violated both Title VII and the ADEA. Compl. The Navy moved to dismiss Plaintiff's Complaint on March 20, 2006. In response to the Navy's motion to dismiss, Plaintiff filed an Amended Complaint on March 31, 2006, which broke Plaintiff's claims into two counts – Plaintiff's first Cause of Action alleges that the Navy breached the Settlement Agreement, his second Cause of Action alleges that the Navy retaliated against Plaintiff by denying him the training he requested in reprisal for filing his EEO complaints, in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e, *et seq.*, Am. Compl. ¶¶ 31-33, and the ADEA, 29 U.S.C. § 633, *et seq.*, *id.* ¶¶ 34-37.

The Navy filed a Motion to Dismiss Amended Complaint or, in the Alternative, to Transfer on April 17, 2006, seeking to dismiss Plaintiff's Amended Complaint pursuant to Federal Rules of Civil Procedure 12(b)(1), 12(b)(3) and 12(b)(6) or, in the alternative, to transfer this case to the United States District Court for the District of Hawaii. Specifically, the Navy argues that Plaintiff's breach of contract claim is a contract claim against the United States seeking damages in excess of $10,000 and that, as a result, exclusive jurisdiction over the claim

4

lies in the Court of Federal Claims pursuant to the Tucker Act, Def.'s Mot. to Dismiss at 6-9. The Navy also argues that Plaintiff's retaliation claim should be dismissed for failure to exhaust his administrative remedies, *id.* at 10-14, and that, even if Plaintiff's retaliation claim is valid, it should be dismissed because venue is improper in the District of Columbia, *id.* at 15-19. As an alternative, the Navy argues that this Court should transfer this case to the United States District Court for the District of Hawaii pursuant to either 28 U.S.C. § 1404(a) or 28 U.S.C. § 1406(a). *Id.* 19-25. Plaintiff filed an Opposition to the Navy's motion on May 1, 2006, in which he opposed each of the Navy's arguments. On May 18, 2006, the Navy filed a Reply in further support of their motion.

## II: LEGAL STANDARDS

Defendant argues that venue in this case is improper in the District of Columbia, and that this Court should dismiss this case pursuant to Federal Rule of Civil Procedure 12(b)(3). When a case is filed in the wrong federal judicial district, the district court in which the action is filed "shall dismiss, or if it be in the interest of justice, transfer such case to any district or division in which it could have been brought." 28 U.S.C. § 1406(a). In considering a motion to dismiss for lack of venue, "unless contradicted by an evidentiary showing, the court accepts the plaintiff's well-pled factual allegations regarding venue as true, draws all reasonable inferences from those allegations in the plaintiff's favor, and resolves any factual conflicts in the plaintiff's favor." *Jyachosky v. Winter*, No. Civ. A. 04-01733, 2006 WL 1805607, * 1 (D.D.C. Jun. 29, 2006) (citations and internal quotations omitted).

Defendant alternatively argues that this Court should exercise its discretion to transfer this case to the District of Hawaii pursuant to 28 U.S.C. § 1404(a), which states that "[f]or the

5

convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought." 28 U.S.C. § 1404(a). The Court is afforded broad discretion to decide whether transfer from one jurisdiction to another is proper under 28 U.S.C. § 1404(a). *SEC v. Savoy Indus. Inc.*, 587 F.2d 1149, 1154 (D.C. Cir. 1978) (quoting *Norwood v. Kirkpatrick*, 349 U.S. 29, 32 (1955)). The decision to transfer is made by an "individualized, case-by-case consideration of convenience and fairness . . . ." *Van Dusen v. Barrack*, 376 U.S. 612, 622 (1964).

The Court must therefore initially determine whether venue in the District of Columbia is proper for Plaintiff's claims, before turning to the threshold question under 28 U.S.C. § 1404(a) of whether this action "might have been brought" in the District of Hawaii. *Id.* at 616. Title VII contains a specific venue provision, which provides that Title VII actions may only be brought:

> [I]n any judicial district in the State in which the unlawful employment practice is alleged to have been committed, in the judicial district in which the employment records relevant to such practice are maintained and administered, or in the judicial district in which the aggrieved person would have worked but for the alleged unlawful employment practice, but if the respondent is not found within any such district, such an action may be brought within the judicial district in which the respondent has his principal office.

42 U.S.C. § 2000e-5(f)(3); *see also Hayes v. RCA Serv. Co.*, 546 F. Supp. 661, 663 (D.D.C 1982).

In contrast, the ADEA does not contain a specific venue provision, rather in an action brought against an officer or employee of the United States, venue is covered by 28 U.S.C. § 1391(e), which provides:

> A civil action in which a defendant is an officer or employee of the United States or any agency thereof acting in his official capacity or under color of legal authority, or an agency of the United States, or the United States, may, except as

6

otherwise provided by law, be brought in any judicial district in which (1) a defendant in the action resides, (2) a substantial part of the events or omissions giving rise to the claim occurred, or a substantial part of property that is the subject of the action is situated, or (3) the plaintiff resides if no real property is involved in the action.

28 U.S.C. § 1391(e).[1]

Even if venue is proper in the District of Hawaii, the Court may transfer a case only if the balance of private and public interests weighs in favor of transfer. *Greater Yellowstone Coalition v. Bosworth*, 180 F. Supp. 2d 124, 127 (D.D.C. 2001). Private interest considerations include: (1) the plaintiff's choice of forum, unless the balance of convenience is strongly in favor of the defendant; (2) the defendant's choice of forum; (3) whether the claim arose elsewhere; (4) the convenience of the parties; (5) the convenience of the witnesses; and (6) the ease of access to sources of proof. *See Jumara v. State Farm Ins. Co.*, 55 F.3d 873, 879 (3d Cir. 1995) (citing James W. Moore & Brett A. Ringle, *Federal Practice* ¶ 0.345[5] (2d Ed. 1995); 15 Charles A. Wright et al., *Federal Practice and Procedure* §§ 3848-53 (2d ed. 1986)); *Trout Unlimited v. U.S. Dep't of Agric.*, 944 F. Supp. 13, 16 (D.D.C. 1996). However, the deference normally given to a plaintiff's choice of forum is "lessened when the plaintiff's forum choice 'lacks meaningful ties to the controversy and [has] no particular interest in the parties or subject matter.'" *S. Utah Wilderness Alliance v. Norton*, 315 F. Supp. 2d 82, 86 (D.D.C. 2004) (citing *Islamic Republic of Iran v. Boeing Co.*, 477 F. Supp. 142, 144 (D.D.C. 1979)). The public interest factors include: (1) the degree to which the courts in both venues are familiar with the governing laws; (2) the

---

[1] Plaintiff's breach of contract would also be governed by the general venue provision found in 28 U.S.C. § 1391(e). However, as discussed below this Court shall leave the decision as to whether to accept jurisdiction over Plaintiff's breach of contract claim to the discretion of the United States District Court for the District of Hawaii following the transfer of this case to that court.

relative congestions of the calendars of the transferee and transferor courts; and (3) the local interest in deciding local controversies at home. *See Jumara*, 55 F.3d at 879-80 (citing Moore & Ringle, *supra*, ¶ 0.345[5]; Wright et al., *supra*, §§ 3854; *Trout Unlimited*, 944 F. Supp. at 16.

### III: DISCUSSION

Defendant argues that venue for Plaintiff's retaliation claim is improper in the District of Columbia under either Title VII or the ADEA. Def.'s Mot. to Dismiss at 15-19. In contrast, Plaintiff maintains that venue is proper in the District of Columbia under both claims. Pl.'s Opp'n at 10-11. The Court finds that venue is improper in the District of Columbia for Plaintiff's Title VII claim, but may be proper for Plaintiff's claim under the ADEA. Nevertheless, as venue over Plaintiff's Title VII claim does not lie in the District of Columbia, guided by the principle of pendent venue and in the interest of justice, the Court shall transfer Plaintiff's entire Amended Complaint to the District of Hawaii so that his claims may be heard together in a single action.[2]

---

[2] Defendant moved to dismiss Plaintiff's breach of contract claim pursuant to Federal Rule of Civil Procedure 12(b)(1), arguing that this Court lacks subject matter jurisdiction over that claim because under the Tucker Act, the Court of Federal Claims has exclusive jurisdiction over contract claims against the United States for more than $10,000. Def.'s Mot. to Dismiss at 6-9. Defendant relies on recent D.C. Circuit jurisprudence indicating that district courts lack jurisdiction over claims for damages arising out of Title VII settlement agreements where the claims do not involve interpretation of Title VII. *Id.* at 7 (citing *Hansson v. Norton*, 411 F.3d 231, 232-33, 235 (D.C. Cir. 2005); *Brown v. United States*, 389 F.3d 1296, 1297 (D.C. Cir. 2004)). Indeed, quite recently in *Rochon v. Gonazles*, a case in which the plaintiff alleged both violations of Title VII and breach of a Title VII settlement agreement and sought both monetary damages and equitable relief, the D.C. Circuit stated that, "the combination of a claim for equitable relief brought under Title VII and a related claim for breach of contract does not give the district court jurisdiction over the contract claim that, if brought separately, would be exclusively in the Court of Federal Claims . . . ." 438 F.3d 1211, 1214 (D.C. Cir. 2006).
However, in *Rochon*, the D.C. Circuit went on to note that it was "not immediately clear whether Rochon's claim, if brought separately, would fall within the jurisdiction of the Court of Federal Claims" because that court does not have jurisdiction over claims for damages sounding

A. *Venue Under Title VII*

Under 42 U.S.C. § 2000e-5(f)(3), venue for Plaintiff's Title VII claim is proper (1) where the Navy's alleged retaliation occurred; (2) where the employment records relevant to the Navy's alleged retaliation are maintained and administered; (3) where Plaintiff would have worked but for the Navy's alleged retaliation; or, only if the Navy cannot be found in any of those districts, (4) where the Navy has its principal office. 42 U.S.C. § 2000e-5(f)(3). Plaintiff's Amended Complaint asserts that venue for his Title VII claim is proper in the District of Columbia "because the employment decisions affecting plaintiff were made in the District of Columbia, records concerning plaintiff's employment are maintained and administered in the District of Columbia, and Defendant, Secretary of the Navy, is located in the District of Columbia." Am. Compl. ¶ 7. The Navy contests each of these assertions.

As the Navy correctly points out, Plaintiff does not allege that he has ever worked in the

---

in tort. *Id.* (noting, however, that the Court of Federal Claims may retain jurisdiction over a suit where the "primary thrust of a complaint is breach of contract") (citation and internal quotations omitted); *see also Taylor v. United States*, No. 05-1045 C, 2006 WL 2949283, *7 (Fed. Cl. Oct. 13, 2006) (Court of Federal Claims lacks jurisdiction over Title VII claims). As Defendant acknowledges, it is equally unclear whether the Court of Federal Claims would assert jurisdiction over Plaintiff's breach of contract claim in this case. Def.'s Mot. to Dismiss at 19-20. That court has recently declined jurisdiction to enforce a Title VII settlement agreement which, like the Settlement Agreement in this case did not authorize monetary damages as remedy for a breach, *see Schnelle v. United States*, 69 Fed. Cl. 463, 466-67 (Fed. Cl. 2006), and it is undisputed that the Court of Federal Claims cannot award an equitable remedy in the absence of a viable claim for money damages, *Taylor*, 2006 WL 2949283 at *13.

Moreover, in *Rochon* the D.C. Circuit suggested that the district court, based on its proper assertion of jurisdiction over the plaintiff's Title VII claim, could determine that it had ancillary jurisdiction over his breach of contract claim. *Rochon*, 438 F.3d at 1215. As such, it appears that because jurisdiction over Plaintiff's Title VII and ADEA claims lies in this Court, it would be possible for this Court to assert ancillary jurisdiction over Plaintiff's breach of contract claim. However, as this Court intends to transfer this case to the District of Hawaii, the Court shall leave the decision as to whether to assert such jurisdiction to the discretion of the United States District Court for the District of Hawaii upon transfer.

9

District of Columbia on Navy activity. Def.'s Mot. to Dismiss at 17. In fact, Plaintiff alleges that he has worked in Japan since being hired by the Navy in February 1987. Am. Compl. ¶¶ 8-9. Plaintiff does not dispute that the Navy's alleged retaliation (denying Plaintiff's requests for training) occurred in Japan. *Id.* ¶ 36. Plaintiff suggests that venue for his Title VII claim is proper in the District of Columbia because the Navy's Final Agency Decision "was made from its offices at the Navy Yard, in SE Washington, D.C." Pl.'s Opp'n. at 11. However, the Title VII venue provision is not concerned with the location of the administrative processing of Plaintiff's claims, but rather with the location of the events giving rise to the claims and the records relevant to those events. *Lee v. England*, No. Civ. A. 02-2521, 2004 WL 764441, *1 (D.D.C. Mar. 9, 2004); *Shipkovitz v. Mosbacher*, Civ. A. No. 90-2159, 1991 WL 251864, *7 (D.D.C. Nov. 12, 1991). Plaintiff therefore cannot circumvent the language of the Title VII statute by seeking to ground venue on the location where his EEO complaints were processed. *Id.*

Plaintiff does not attempt to assert that he would have worked in the District of Columbia absent the Navy's alleged retaliation, thus the third prong of the Title VII venue provision is irrelevant. As to the second prong, Plaintiff asserts that "records concerning plaintiff's employment are maintained and administered in the District of Columbia." Am. Compl. ¶ 7. However, in support of its motion to dismiss, the Navy submitted the sworn declaration of Jeffrey Wataoka, Director of the Human Resources Service Center Pacific (HRSC Pacific) in Honolulu, HI. Def.'s Mot. to Dismiss Ex. 1 (3/16/06 Wataoka Decl.) ¶ 1. Mr. Wataoka avers that HRSC Pacific "maintains and administers the [official personnel records] of currently employed and recently separated employees of the [Ship Repair Facility in Yokosuka, Japan," *id.*

¶ 5, that HRSC Pacific has done so since April 1998, *id.* and that Mr. Wataoka is the custodian of Plaintiff's official personnel records, which are maintained and administered at HRSC Pacific, *id.* ¶ 6. As such, Plaintiff's unsupported speculation that his employment records are maintained and administered in the District of Columbia cannot suffice to establish venue under the second prong of the Title VII venue provision because it is contradicted by the Navy's evidence. *Jyachosky*, 2006 WL 1805607 at *2, *Lee*, 2004 WL 764441 at *1 n.1.

Venue for Plaintiff's Title VII claim is also improper in the District of Columbia under the fourth prong of the Title VII venue provision because that provision "permits venue to be laid where the respondent has his principal office only if the respondent is not found within any of the other districts covered by the statute." *Lee*, 2004 WL 764441 at *1; *Mackey v. Sullivan*, Civ. A. No. 90-00007, 1991 WL 128510, *2 (D.D.C. Mar. 28, 1991) (citing *Archuleta v. Sullivan*, 725 F. Supp. 602, 604-05 (D.D.C. 1989)). Plaintiff's official personnel records – which would presumably contain all records relevant to the Navy's alleged retaliation – are maintained and administered at HRSC Pacific in Honolulu, Hawaii, an office of the Department of the Navy. Def.'s Mot. to Dismiss Ex. 1 (3/16/06 Wataoka Decl.) ¶¶ 1, 6. As the Navy is therefore found within the district where the records relevant to the allegedly illegal employment practice are maintained and administered, Plaintiff cannot rely on the fourth prong of the Title VII venue provision to claim that venue lies in the District of Columbia.

B.   *Venue Under the ADEA*

In contrast, the ADEA does not contain a special provision, rather venue for Plaintiff's ADEA claim is proper (1) where the Navy resides, (2) where a substantial part of the events giving rise to the action occurred, or (3) where Plaintiff resides. 28 U.S.C. § 1391(e). Plaintiff

11

works in Japan and his official personnel records indicate that his home of record is in California, thus venue does not lie in the District of Columbia under the third prong of § 1391(e). Def.'s Mot. to Dismiss Ex. 1 (3/16/06 Wataoka Decl.) ¶ 7. Furthermore, as discussed above, all of the events giving rise to Plaintiff's claim of retaliation under the ADEA occurred in Japan, not in the District of Columbia. Although Plaintiff maintains that it is his "position that a substantial part of the decisions were made in the District of Columbia," Pl.'s Opp'n at 11, such speculation is insufficient in the face of the Navy's evidence – a sworn declaration stating that Plaintiff has only worked for the Navy in Japan and a letter from Plaintiff to his Commanding Officer stating that his request for training was submitted to his supervisor and denied by his department director due to a Commander Naval Forces Japan Instruction. *Jyachosky*, 2006 WL 1805607 at *2; *Lee*, 2004 WL 764441 at *1 n.1; Def.'s Mot. to Dismiss Ex. 1 (3/16/06 Wataoka Decl.) and Ex. 3 (4/12/02 Letter from Plaintiff to Captain Bella, Commanding Officer, Naval Ship Repair Facility, Yokosuka, Japan). Moreover, even if Plaintiff were correct that a portion of the allegedly retaliatory decisions were made in the District of Columbia, "[v]enue cannot lie in the District of Columbia when 'a substantial part, if not all, of the employment practices' . . . took place outside Washington even though actions taken in the District of Columbia 'may have had an impact on plaintiff's situation.'" *Mackey*, 1991 WL 128510 at *2 (citing *Donnell v. National Guard Bureau*, 568 F. Supp. 93, 94 (D.D.C. 1983)).

Plaintiff asserts that, under the first prong of § 1391(e), Plaintiff's ADEA claims could be brought in either the Eastern District of Virginia or the District of Columbia. Pl.'s Opp'n at 11. Defendant contends that the Secretary of the Navy is located at the Pentagon, in the Eastern District of Virginia, Def.'s Mot. to Dismiss at 19; however, "[o]fficers and agencies of the

United States can have more than one residence, and venue can properly lie in more than one jurisdiction." *Jyachosky*, 2006 WL 1805607 at *4 (citation omitted) (finding that venue for plaintiff's ADEA claim against the Secretary of the Navy could lie in the District of Columbia). "When an officer of agency head performs a 'significant amount' of his or her official duties in the District of Columbia, the District of Columbia is a proper place for venue." *Id.* (citing *Bartman v. Cheney*, 827 F. Supp. 1, 1 (D.D.C. 1983)); *see also Smith v. Dalton*, 927 F. Supp. 1, 5-6 (D.D.C. 1996) (holding that the Secretary of the Navy may be sued in his official capacity in either the Eastern District of Virginia or the District of Columbia). As a result, although there is no evidence in the instant case that the Secretary of the Navy performs a significant amount of his official duties in the District of Columbia, case law indicates that venue for Plaintiff's ADEA claim might be proper in the District of Columbia.

Venue for Plaintiff's ADEA claim would, of course, not be proper in the District of Hawaii based solely on 28 U.S.C. § 1391(e). However, the authority in this Circuit indicates that when a plaintiff brings a Title VII action, which is covered by Title VII's restrictive venue provision, as well as an action governed by the general venue provision, the narrower venue provision of § 2000e-5(f)(3) controls. *See James v. Booz-Allen & Hamilton, Inc.*, 227 F. Supp. 2d 16, 21 (D.D.C. 2002); *Stebbins v. Nationwide Mut. Ins. Co.*, 757 F. 2d 364, 367 (D.C. Cir. 1985) (where venue is improper under Title VII, 28 U.S.C. § 1391 does not provide an additional place of venue); *Hayes v. RCA Serv. Co.* 546 F. Supp. 661, 664-65 (D.D.C 1982) (plaintiff must bring discrimination claims under 42 U.S.C. § 1981 (governed by general venue provision) and Title VII where venue lies under 42 U.S.C. § 2000e-5(f)(3)). Alternatively, some courts addressing such an exercise of pendent venue have determined that the Title VII venue provision

controls where it is the "primary" claim. *See James*, 227 F. Supp. 2d at 21 (citing *Turbeville v. Casey*, 525 F. Supp. 1070, 1071 (D.D.C. 1981); *Laffey v. Northwest Airlines*, 321 F. Supp. 1041, 1042 (D.D.C. 1971). While venue for Plaintiff's ADEA claim may therefore be proper in the District of Columbia, venue for Plaintiff's Title VII claim is only proper in the District of Hawaii. As a result, the Court concludes that the proper course of action is to transfer Plaintiff's entire Amended Complaint to the District of Hawaii, rather than have Plaintiff's claims separately considered in different venues. *See Ridgely v. Chao*, No. Civ. A. 05-1033, 2006 WL 626919, *4 (D.D.C. Mar. 13, 2006) (citing *Crenshaw v. Antokol*, 287 F. Supp. 2d 37, 42-43 (D.D.C. 2003)).[3]

Before the Court can determine that Plaintiff's Amended Complaint should be transferred to the District of Hawaii however, the Court must consider the relevant private and public interest factors. *Greater Yellowstone Coalition*, 180 F. Supp. 2d at 127. Plaintiff's choice of forum is entitled to less than ordinary deference as Plaintiff is not a resident of the District of Columbia and this action bears no "meaningful ties" to the District of Columbia. *S. Utah Wilderness Alliance*, 315 F. Supp. 2d at 86.[4] Moreover, the Navy favors litigating this action in the District of Hawaii and notes that the events giving rise to the action occurred in Japan, and that the relevant records are in Japan or Hawaii. Def.'s Mot. to Dismiss at 24. Indeed, as it

---

[3] The Court believes that the interests of justice and judicial economy favor transferring Plaintiff's entire Amended Complaint to the District of Hawaii. However, in the event that Plaintiff disagrees, he may seek to sever his claims and litigate his ADEA claim in the District of Columbia, where venue properly lies.

[4] Plaintiff's assertion that venue in this action should lie in the District of Columbia because his counsel is admitted to practice in the District of Columbia but not in Virginia or Hawaii is entitled to little, if any, weight under 28 U.S.C. § 1404(a). *See Armco Steel Co, L.P. v. CSX Corp.*, 790 F. Supp. 311, 324 (D.D.C. 1991) (citing *Islamic Republic of Iran v. Boeing Co.*, 477 F. Supp. 142, 143-44 (D.D.C. 1979)).

appears that the relevant witnesses in this action are located in Japan, Def.'s Mot. to Dismiss at 24, the Court notes that Japan is significantly closer to Hawaii than to the District of Columbia. As such, in the interest of justice and for the convenience of the parties, the Court shall grant the Navy's motion to transfer this action to the District of Hawaii, pursuant to 28 U.S.C. §§ 1404(a) and 1406(a).

## IV: CONCLUSION

For the reasons set forth above, the Court shall grant Defendant's motion to transfer venue and shall deny without prejudice Defendant's motion to dismiss so that Defendant may refile that motion, if appropriate, upon transfer to the District of Hawaii. An appropriate Order accompanies this Memorandum Opinion.

Date:   November 20, 2006

/s/
COLLEEN KOLLAR-KOTELLY
United States District Judge